May it please the Court. I'm Jay Jorgensen. I'd like to reserve three minutes for rebuttal. I represent Ms. Snavely. Now, we've got it marked on – I've got it marked on my day sheet for 20 minutes aside, is that correct? That's right. I think we may need to reset the clock for 20. Okay. Oh. So – and are you splitting the argument or are you just – No, it's just me. It's just you and you're saving how much? I'd like to save three minutes. Okay. There we go. Your Honors, I come to this case sharing your point of view. I joined this case after the briefs were submitted to the Court and I hope that as a result I can be helpful because I see things from the record as you see them. There are, as you said before, Your Honor, a lot of sub-issues here. So can I start – I hope it would be helpful by laying out just a brief roadmap of the issues and how they come together. Which firm are you with? I'm with Sidley, Austin, Brown and Wood. The overarching issue of this case is race judicata. If that claim is – that argument is decided in favor of Ms. Navely, there is no need for the Court to proceed further. Which – which – Race judicata. Oh, okay. The essence of this case is really who gets to decide, which also then goes to the second big argument, which is core proceedings. And then the – finally, there's a group of claims that can be bunched together as a – under the tort heading. And those all stand together. Some of them can be knocked out individually, but likely, I believe, they'll all stand or fall together. So let me go in, if I may, into race judicata. This case had already been decided by the King County Superior Court. Now, I saw that the Court called for the King County Superior Court's oral ruling. I hope you've read it. It is an outstanding document in the sense of it contradicts the Bankruptcy Court's findings on every issue exactly the other way. The Bankruptcy Court found that there was a commingling. The State Court found specifically that there was not. The Bankruptcy Court found that under Washington law, Ms. Navely breached her fiduciary duties. The State Court found specifically on the same facts that as a matter of State law, she had not breached her duties. I can – if you – if it's helpful, I have a list of the page numbers at which the State Court found these decisions. And we – it's our argument that that's entitled to respect. Now, Mr. Miller argues it's not entitled to respect because the State Court issued that ruling and then Mr. Miller filed for bankruptcy. And then the State Court was not able to get its written ruling of findings of fact and conclusions of law into the record until after that. I think we're all in agreement, the Bankruptcy Court and both sides in this case, that that turns on an issue of State law. Section 541C of the Bankruptcy Code says that if this trust, which had a valid Spendthrift provision, had not terminated, then Mr. Miller's interests had not attached and the Bankruptcy Court's – I mean, the State Court could enter its judgment. And what Mr. Miller had was at the end of the Bankruptcy Court a right to receive about $200,000, not a right to one-third. Now, I think this is important. This is the Bankruptcy Court's June 7th order. It's important because this is the Bankruptcy Court's fundamental flaw on race judicata. The Bankruptcy Court says in its June 7th order, I find as a matter of State law that this trust terminated as of five years of Marguerite Miller's death by its own terms. The State Court had found on five separate occasions that that was not true, had specifically rejected that claim over and over and over again, and then at a sixth time rejected that as it was entering its proposed findings of fact and conclusions of law. So what we really have here is the Bankruptcy Court has said to the Washington Court, I conclude based on my reading of State law that you are wrong as to what State law is and how – At what point does the automatic State kick in? The automatic State kicks in when Mr. Miller files his bankruptcy. I understand that. With respect to the Washington State superior court. So two days after the superior court gives its oral ruling, which if you've read is very detailed and says the only thing that I'm reserving, the only reason I don't have a written ruling today is I need you to fill in the details. Judge Leonard says that at two points. And what I mean by the details, I mean the mundane details of dates. And she says that. Then two days later, Mr. Miller files for bankruptcy. And then on the 21st, two weeks later, the trial court, the King County Court, enters its proposed findings of fact and conclusion of law. And is that a judgment yet under Washington law? That is a judgment. That is a judgment. So that's in violation of the automatic State. It's only in violation of the automatic State if under 541 – and the bankruptcy court agreed in its June 7th order. If under 541C, this is a valid spendthrift trust, then the bankruptcy court takes no jurisdiction over it. That's the point of the court's June – it's the second thing in our excerpt of record. I recommend it to you. The bankruptcy court addresses it right up front and says, does this order of the King County Superior Court stand or not? But it turns on 541C. 541C says if a trust is a valid spendthrift trust in existence at the time of the filing of bankruptcy, then the bankruptcy does not attach. Under Washington State law, does duration of trial consequences flow once the trial judgment is entered, or does it require that the possibilities for appeal have been finished? I believe it attaches when the judgment has been entered. And you believe that on what basis? I'm sorry, Your Honor. I didn't bring those to the table. If it would be helpful, I would be more than happy. Because some States do it when you get a judgment out of the trial court. Some States require that you – that there's no reason to require a consequence until you're finished with your appellate process. If it would be helpful, I'd be more than pleased to submit a two-page letter for you. The short answer is at this point, as you stand here, you don't know. I do not know, although we have looked at that. And my memory is that it is at the State court trial judgment. But it doesn't matter. I'd like to return to that. Did the automatic say take effect before the judgment was entered in the State court? Before the written judgment was entered, yes. But that, again, doesn't matter for two reasons. Is there a difference? Yes. And there is a difference. An oral statement under Washington law is the entry of a judgment? No.  I'm saying that the oral statement resolves the issues and may not be entitled to res judicata under Washington law. The written statement clearly is. But it doesn't really matter for two reasons. The first is when the Federal courts, whatever Federal court you are, is making a ruling on State law, the ruling is in the nature of a prediction. What would, based on the precedents, what would the State courts say that the – how these issues would be resolved, these specific facts? And you have to predict based on the closest analogous case law. If a State court has said whether or not it's entitled to res judicata effect, this is the meaning of State law on this issue. It is, under the principles of res judicata, the broader umbrella, fundamentally wrong outside of the bankruptcy court's jurisdiction or any Federal court's jurisdiction to say, you State court, you are wrong as a matter of State law. Now, that can't possibly be. It is. No. Maybe I'm misunderstanding you. Let's say that I'm a bankruptcy judge. Yes. And you're trying to tell me that a judgment here, a final judgment, of the Superior Court of the State of Washington tells me what the law of the State of Washington is, and I think you're wrong. And I think the Superior Court judge is wrong. And I say, you know, let me look around at some other cases in Washington law. Let me look at what the Washington Supreme Court has done. All you're giving is a judgment of the Superior Court. The bankruptcy judge is fully at liberty to say the Superior Court judge got Washington State law wrong. Now, most judges won't, but they can. I respectfully don't believe that's true, Your Honor. Well, what happens if the Superior Court judge is demonstrably wrong? That is to say, from the face of the order, you can see that it's in conflict with an earlier decision of the Washington State Supreme Court. The reason this is perhaps could happen is because in most cases you don't have a specific ruling on this case. And so you're trying to analogize. But if the State courts have ruled, have said that the State court has not given you a judgment, so all you're entitled to is the persuasive consequence, and if the bankruptcy judge is not persuaded, he is not persuaded. But not true under 541C. Under 541C, the State court is allowed to continue if the spendthrift trust continues in effect. Help me understand the spendthrift trust point, because I'm not sure I understand that yet. Okay. Under 541C, and this is, again, the Bankruptcy Court's June 7th order, if a valid spendthrift trust is in existence, that spendthrift trust protects the assets of the trust from the attachment. The assets of the trust are not subject to the automatic stay because they are not property of the debtor. They are protected by the spendthrift clause. So the question in this case was the trust said it will terminate five years from the death of Marguerite Miller. And so the question was more than five years had passed, and the King County Superior Court was wrapping things up. And so Mr. Miller said in five separate instances to the King County Superior Court, this trust no longer exists. It is no longer a valid spendthrift trust, and I am entitled to one-third. You are not entitled to do an accounting. The trust is over. I get my third. And the ---- So was this argument made in the brief? Yes. I believe it was in a number of cases, Your Honor. It's in the facts in the King County section. It's in the argument. This argument that the 541C implications control the race judicata analysis, was that argument made in the brief? 541C itself is not in there, but I believe the argument is in there repeatedly. And here's where you'll see it discussed. It's discussed in terms of was the trust a creditor of ---- That's a different issue than whether or not 541C compels the race judicata. It drives the race judicata analysis. I'm glad you raised that, Your Honor, because actually they are the very same issue. If 541C does not apply, then the trust is a creditor. Because the spend provisions do not protect the assets. And in order to recover the costs of the trust, you have to seek them in the bankruptcy. If 541C does apply, as the court, bankruptcy court said that it did in its June 7th order, the second thing in the excerpt. Okay. Help me out then. Show me in the brief where I can find this argument that you're making right now. If you'll just grab the blue brief and show me where that argument is. I definitely will, Your Honor. Okay. If you don't mind, I would love to do it on rebuttal because then I can use the other time to find it. Let me just wrap up on race judicata. The King County Superior Court ruling is entitled to race judicata effect. Even if it weren't entitled to race judicata. Which ruling? The written ruling is entitled to under 541C. One that was issued in the face of an automatic stay. Yes. Because of 541C. And that is the very issue that the court considered. Do I have authority to issue this? And the court said in good faith, I don't have the authority to issue an award of attorney's fees against Mr. Miller for vexatious litigation, as I had said I would. Because that is not protected by 541C. But I do have authority, because this is a valid spendthrift trust, to finish up my accounting. Because these assets have not been attached. The State does not apply to them. And, of course, the issue of is it a valid spendthrift trust, the bankruptcy court agrees, is an issue of State law. Both under the statutes of State law as to whether a trust continues on for its winding up or ends on the day of, and as a condition of the terms of this particular trust which said this trust shall be. Let me make sure I follow that argument. You're saying that the Superior Court judge has held as to the spendthrift trust, that doesn't come within the bankruptcy. That does not come within the automatic stay. That is the point of the final order, of the March 21st order. And what if the bankruptcy judge disagrees and says that my automatic stay does extend to that? That depends on whether the trust is a valid spendthrift trust under State law. Well, and who gets to decide that question? I think the State courts get to decide matters of State law. But if it's – I think we've got a circular problem here. We really do. And this really infects the whole case, because, for instance, in the tort claim, the Court awarded tort damages based in part on Ms. Miller's – or Ms. Nabley's, rather, alleged failure to give enough notice of the trust accounting over the years to Mr. Miller. But the State court, again, had said as a matter of State law, she gave more than enough, and any more would have been unproductive. Did your client ever go to the bankruptcy court and either ask relief from the automatic stay or for a specific judgment that the automatic stay did not apply to this? Yes, multiple times. Because when they – And what happened? And the bankruptcy – this is the June 7th order. And the bankruptcy court said in the June 7th order, I'm going to apply amdure, which says trusts generally end at their date, and I'm going to apply these two Washington appellate court precedents, which are not exactly on point, but from which I can reason, to say this trust ended as a matter of State law. Therefore, I disagree with you, State court, as to the meaning of State law. Yeah. So in other words, the bankruptcy judge considered it and said this was covered by the automatic stay, and I win. Yes. He did explicitly tell the State courts they were wrong as a matter of State law. Now, moving on to court proceedings. Grace Giudicata would answer everything, and everything would go back. As to court proceedings, that really applies to – primarily to the tort claims. Before I leave that, if I can make one more point on Grace Giudicata. The bankruptcy court's treatment of the King County Superior Court judgment is not the only judgment that is entitled to Grace Giudicata. Ms. Miller herself – Ms. Nagley herself had a 1995 bankruptcy. In that bankruptcy, Mr. Miller asserted many of the claims that he is asserting here – failure to give sufficient accounting, breach of fiduciary duty, misuse of trust assets. Anything – any fact that occurred before 1995 is therefore out. It could have been raised in the 1995 litigation between the two. So – and the bankruptcy court relied on facts going back far beyond and did not parse them. As you read the bankruptcy court's order, which, you know, is very strong against Ms. Nagley, although the King County Superior Court's judgment is just as strong on the same facts for Ms. Nagley. But as you read that, he does not segregate. That is really crucial because there's no way to affirm. There is no way to affirm without – there's no way to carve out those pre-1995 facts and say, on the facts post-1995, it's clear to us that would have been enough. So it has to go back based on that. Now, as to court proceedings, it's clear that the tort claims were not court proceedings. The test under In re Yocum is whether – well, there's really four points to look at. I'm saying the tort claims that Mr. Miller raised in his 1999 litigation and which then became counterclaims once the bankruptcy court forced Ms. Nagley to file her proof of claim. Those existed prior to the bankruptcy, which is one of the points under Yocum and Castle Rock. They exist independent of bankruptcy law. As a matter of fact, they're issues of state law. And those are two points. Did they exist before? Were they raised before? And were they issues of state law? So there's really, I think, no argument, no point to sustain the idea that the tort claims were not court proceedings. And so, therefore, they must go back because the bankruptcy court and the district court treated them in the wrong procedural fashion. Now, if I can move on, if the Court has no further questions on court proceedings. Just make sure you save your three minutes for rebuttal. Thank you. As to damages, I want to hit that briefly because when I read the bankruptcy court's judgment, I was left with the wrong impression. The bankruptcy court's judgment seems to say on a first read, and I realize I'm losing my time, but that the damages to Ms. Miller, or to Mr. Miller, on the tort claim, on the tortious interference, flow from the lost opportunity in Arizona, and that perhaps that has to do with the property in Arizona being at a diminished value and later it would have gone up in value. But when you read the bankruptcy court's opinion closely, and then you actually go to the record site that he cites, that is not what he's saying. And I don't want you to have the same impression that I had. What the testimony was, was that Mr. Miller had a lost business opportunity, that if he had been given $695,000 at that point, he would have bought a certain parcel of property with it. That parcel of property would have returned him 10.5 percent over the years, and that those were the damages, the 10.5 percent over the years. The testimony from Mr. Miller's own witnesses is that as a result of the tortious interference, his property, which he was compelled to keep, went up in excess of that value, and so there are no damages. So I'll say for my remaining time. Roberts. Thank you. Mr. Binney. Thank you. May it please the Court, my name is John Binney, appearing again in this matter on behalf of Mr. Miller. And I do not want to complicate this matter any further, as it is a fairly complicated matter, but in response to the argument made by Ms. Snavely's counsel in this case regarding res judicata being a potential resolution of all of this, I have to say that two points on that. First of all, what they've referred to is the prior orders of the bankruptcy court, May 2nd, 01, I believe June 1st, 01, and June 7th. That's where the issues of res judicata and the related matters were argued. Those matters were appealed by Ms. Snavely. They were argued in October of last year in front of another panel of this Court, and this Court has resolved finally all of those matters. In late October ---- Are you saying that res judicata cuts the other way in terms of prior panels ever resolve this very argument? What I'm saying is that in those appeals, one of the issues that was finally decided was Mr. Miller's request for an easement. And the panel there found, affirmed the district court, which affirmed the bankruptcy court, and found that Mr. Miller was entitled to an easement and that Ms. Snavely's argument that res judicata, collateral estoppel, accord and satisfaction precluded that were rejected by another panel of this Court. And I believe, as this Court is aware, that is generally under the doctrine of law of the case. And I realize that that wasn't cited in the brief, but I have to tell you that those proceedings were requested. There was a request for rear hearing, which was denied in approximately April. Then, in fact, Mr. Jorgensen's firm in D.C. filed a request for an extension of time to file a writ of cert on those matters. That time has just passed about a month ago or six weeks ago. I was ---- I never received anything on it. I did contact another attorney there. So they're now just final. And so that's why I'm making this argument today. It's our position that their reliance on res judicata, collateral estoppel or any of the related matters have essentially been eliminated by law of the case. And this circuit has indicated that, as a general rule, one appellate panel will not rule on issues that have already been rejected. And I would refer this Court to those cases. They're final. So I don't think we even get to that issue of res judicata because they raised that before. As this Court pointed out, they didn't specifically raise those issues in this appeal. What they're doing is trying to backdoor issues they raised in those appeals, saying the bankruptcy court essentially second-guessed the Washington Superior Court. They can't do that. That, you know, essentially if there wasn't property, if it wasn't property of the estate because of the spendthrift. All of those issues were very voluminously briefed. I argued it this time last year or actually in October of last year. And those were finally decided. A great part of it ---- On page 42 of the blue brief, there is a reference made to a res judicata collateral estoppel in a court of satisfaction. And I will deal with that specifically. But I guess that still I don't believe affects my argument. My argument is they raised the same thing in the other appeals before. Those appeals are now final. There's no writ of cert pending. That's law of the case. And there are cases I can find them. They're sort of buried in my notes. But there are cases by this circuit that indicates if one panel rules on a certain issue in the same case, that a subsequent panel basically is more or less bound by that. There's only three exceptions. One is if it didn't emanate from the same trial. All of this were the same hearings, the same parties. Another, if there's been a change in the controlling law on res judicata. That hasn't happened. So I think that the law of the case binds Ms. Snavely in these appeals, this one for sure, based on the prior disposition. And I have copies of those determinations, but obviously the panel can find those. Was the 541C and the Spencer Trust argument made in this earlier appeal? Yes, quite voluminously. And not only on the basis of res judicata, which I think even if you get to the res judicata argument, it doesn't apply. Because I believe under res judicata, there has to be a finality, which was not the case in the Washington Superior Court. They also, in those cases, made the argue under Rooker-Feldman that essentially the bankruptcy court was doing an impermissible review of a state court decision, which only the U.S. Supreme Court can do. And under the Gruntz decision, McGann and its progeny have indicated that that doesn't apply in the bankruptcy context. So counsel in this matter hasn't made that argument, but it's our position that those things were very specifically and detailed, briefed. Those three appeals went up, were argued, are now final. They shouldn't be able to raise them again in this matter. You use the term finality. How are you using it? I'm using the term finality in those prior three appeals, which I believe are 0235, 248, 35290, and 35313. You're not referring them to the state courts? I'm not referring to the state courts in those comments, Your Honor. I would say that it is our position that, you know, even if you get to res judicata based on the State Superior Court matters, that those weren't at the time the bankruptcy was filed, those were not final arguments, those were not final. And, again, the cases that we cited in those prior three appeals specifically indicated that once the bankruptcy is filed, that it's the bankruptcy court that makes that determination. Now, this Court, you know, in reviewing the bankruptcy court, could determine the bankruptcy court's determination about whether the property was property of the estate. You know, this Court could determine that was erroneous. But those issues, my point is, those issues were all raised in those prior three appeals. Does Washington law permit a motion for reconsideration after a court makes an oral statement as to its intention to rule? First, I have to tell you I'm a Montana lawyer. We had co-counsel from Washington. So my response, Your Honor, is merely that my understanding is that it can be done, and certainly there's the, you know, the ability for an appeal. The other point, and, again, I'm fragmenting this. I apologize. But it's important to note that, really, the Washington court was doing two things. One is it was determining an accounting issue under the trust. And, second, it was allowing Ms. Snavely to sell the property, including Mr. Miller's interest, to herself. Those were the two things. Basically, anecdotally, her price to buy Mr. Miller's interest for herself was more than a half a million less than he sold it through his bankruptcy court. But the point is that the bankruptcy court has now approved the sale by Mr. Miller, including these easements. That was the issue raised in one of the prior appeals that this Court affirmed. Approved the sale, essentially, so that whole part of that is gone. It's going to be a real problem, I believe, to refer the trust accounting issue separately back to the superior court. I don't believe, one, that it's warranted by the law, and, two, it's going to be a problem of, you know, a judicial nightmare if it is sent back with only part of the issue. So I would respectfully indicate that res judicata, both on the specific issue they raised in their brief on page 42, I believe that related just to one tort damage claim, but also generally res judicata as to the effect of the superior court, it would not be applied based on the law of the case in these prior appeals that are now final of this circuit. The second issue I wanted to raise was one that the Court had asked for supplemental briefing on. And that essentially was the issue of, and I didn't actually hear it in argument, but that was the issue of whether Snavely is judicially estopped by her admission that her proof of claim and the proof of claim of the Marguerite L. Miller Trust were core matters. It's our position that, based on the standard that has been set out within the Ninth Circuit, that that's the case. If you look at the briefing in front of the district court, in her first brief, she doesn't specifically admit that the proofs of claim are a core proceeding, but her argument on noncore is the same as it was today by counsel in front of this panel, that what's noncore is essentially the tort claims. And there was no mention, no argument, in the original brief to the district court that the proofs of claim were noncore. Then Miller responded in his appellee brief to the district court, and in the reply brief, as noted by this Court in its request for supplemental briefing, she specifically admitted that the, that basically the proofs of claim issue was a core matter. And I think that, at a minimum, this Court must review those proofs of claim, the bankruptcy court's determination that her $603,000 claim as trustee was reduced to the bankruptcy court had the right to make based on judicial estoppel. She's taken an inconsistent position that there are, I don't believe there's been one specific attest, test adopted by the Ninth Circuit. My review of the cases was rather brief based on the fact that that was just requested about two weeks ago. But it appears to me that there are a number of different tests. What appears to be most likely is whether the, the court accepted her prior position. And if you look at the district court order of March 10 of 03, which essentially affirmed this decision, the bankruptcy court decision of January 25th, 02, it doesn't even talk about the proofs of claim. So it's accepting her position that that's core, and it doesn't even deal with that. And so it's my belief that judicial estoppel applies. Ms. Snavely should not be able to assert on rebuttal or, you know, during her briefing in this case, that that is a noncore matter. And accordingly, the bankruptcy court's findings on the proofs of claim and reduction of that are based on a clearly erroneous, the factual findings. And I would say my review of the roughly 1,400-page transcript of that trial is that there, the, the transcript was replete with the findings that supported Judge Peterson's reductions of the claims, the deductions of the amounts. So on that basis, you know, in terms of the judicial estoppel issue. Now, I have to admit that the weakness, perhaps, of Mr. Miller's case from a procedural standpoint is the core issue as to whether the tort claims are a core, core issue. The statute, specifically, 157, basically says that counterclaims to claims filed are core issues. It's clear that her proofs of claim were core issues. I have reviewed counsel's, counsel's authorities that the tort claims are not core, are not core. It's our position that it, that they are. But I would, I would acknowledge that that's probably our weakest issue. And I, I would request that the Court make the determination. But if, for whatever reason, the Court determines that the tort claims were not core proceedings, what should be done is that portion of Judge Peterson's January 25, 2002 order should be sent to Judge Malloy to review from a de novo standard, as it requires. Now, again, I don't think you have to go there. But I, in all candor to the Court, I would have to concede to counsel that that is probably their strongest argument. I would stand on our brief, though, that the, that the statute does indicate on its face that counterclaims to proofs of claim, which they have admitted are core, are, in fact, core proceedings as well. And the Court should review it on that basis. What about opposing counsel's argument that the proof of claims that were filed by, the proofs of claim that were filed by Snavely were coerced, that they were done voluntarily? I think if you look at the cases, Your Honor, that even if that is the case, that they are, you know, they are a core proceeding. The proofs of claim are a core proceeding, even if they're a defensive or a coerced proof of claim. And in addition, as I indicated, she's made the judicial admission that they're core proceedings, and we believe she's bound by that. Now, she did footnote in her brief to the district court, she did footnote that she still maintains that the bankruptcy court lacked jurisdiction. If you look at that footnote closely, I think it's footnote 4 in her reply brief to the district court. She says, and the basis of that is those prior three appeals, which are now final and were decided against her. So she has no fallback position to say, well, we were always saying that there was no jurisdiction, so clearly it wasn't core. I mean, that's gone, and she made the judicial admission. So it's our position, Your Honor, that you don't have to get to that, that even if it's a defensive filing, that is a core. And the cases cited, from what I can tell, the cases that were cited all say the proof of claim is still a core proceeding. The counterclaims to it may not be in that context. I wanted to talk about one issue that was raised in their brief that hasn't been raised in argument, and that essentially was the newly raised argument that the probate exception, and bear with me for just a minute, that the probate exception precludes jurisdiction of the court in this matter. The Ninth Circuit basically has in Ray, well, actually a court within the Ninth Circuit in Ray Marshall, which is referred to, I guess, as the Anna Nicole Smith case, discusses a Seventh Circuit test as to whether the claim rests on an assertion that a will is invalid. If that's the case, then the probate exception divests jurisdiction from the Federal Court. Now, the litigation that we have here, the tort claims, and even the determination of the proof of claim is not declaring that the will is invalid. There is no will, and even if a trust is determined to be akin to a will, there's no indication that Mr. Miller has challenged the validity. So it's our position that the probate exception does not apply. Likewise, and again, although I'm not a Washington, an attorney licensed in Washington, it is my understanding, and I think admitted by Snavely in their brief, that the court handling this was essentially a general trial court, not a specialized probate court. And that's the test that's been set out, essentially, by the courts that have discussed the probate exception. The Ninth Circuit, I don't believe, has ruled or adopted a specific test on that, but it's our position that under any view of that, the probate exception doesn't divest the court of jurisdiction. And to conclude my arguments, I would like to go through some of the line items that Snavely has in her challenges to the January 25, 2002, order. Clearly, the findings of fact that the court, the bankruptcy court made, to the extent they are core proceedings, are the findings of fact are reviewed from the clearly erroneous standpoint. And on all of the findings in the court, if you look at the transcript, look at the exhibits in the end. Can I interrupt you? I should have done this when you were back talking about core proceedings. It seems to me, and you conceded that the core proceeding issue is a point of trouble to you. Within that, it seems to me that your weakest one is the easement claim. That is to say, it sounds as though that easement claim was adjudicated before we had the claims, proof of claims by Ms. Snavely. Is that right? Now, there's two easement claims. I want to be clear. I understand your question, Your Honor. Which easement claim are you talking about? Again, there's an easement claim. Let me see. I'm not sure I got it right. Give me the two, and then I'll choose. Yes, Your Honor. There was attorney fees awarded to Mr. Miller for enforcing an easement that was previously given. It was under the Rule 70. That was the one easement. That was an easement that got to what's known as Section 17 land. The other easement is the easement that issue that went up on appeal before. Mr. Miller was granted on the November 27th order by the bankruptcy court, which was subject to a prior appeal that's now final. Mr. Miller was granted an easement across the former trust property. So those are the two easements that have come up generally in this case. And was there one of those two easement claims that was adjudicated before Ms. Snavely filed her proof of claim? Yes. And which of those two was it? That is the Rule 70 motion where Mr. Miller got fees from the bankruptcy court of $5,120. Out of his total damages, he got $5,120 for her essentially violating that prior order of the court. And there was no word given for that, Your Honor. And why is that one court proceeding? Your Honor, it's our presumption that that's a court proceeding because essentially that was an order of the court enforcing a prior order. And it appears to me that the court always has jurisdiction and is able to enforce a prior order that the court has issued, and that that would be a core matter by the bankruptcy court. Okay. And I've already discussed this briefly. And, again, I know it's a bit fragmented. But Snavely makes an argument in her brief, again, that res judicata collateral satisfaction, that Miller's damage claims are precluded by that. And I just wanted to indicate that that law of the case precludes that. But, in addition, we responded in our brief, and I wanted to make briefly the point that the actions that are alleged there that gave rise to that portion of the damage claim, those were actions after the relevant time frames. In other words, actions after the confirmation of her prior plan. She had filed a bankruptcy back in 1995. So even if you didn't preclude those by law of the case, they're in a time frame that wouldn't otherwise be precluded by collateral estoppel res judicata or accordant satisfaction. The bankruptcy court, in our position, clearly made detailed findings on the proof of claim, looked underneath the proof of claim at all of the trust accounting. Their assertion that those findings were clearly erroneous, I think, is certainly not supported by the record in this case. In addition, Snavely argues that the findings that she breached her fiduciary duties as trustee are not supported. Again, I think the record is clear that the testimony of the expert, Mr. Sherwood, who's from here in Seattle, that there were numerous fiduciary duty breaches, and that the court's findings of those are clearly supported by the record, and we believe that the court needs to affirm that finding. The tortious interference with the business interest. This is the other point that was made on argument by counsel. The evidence in that case, essentially, was that Mr. Miller had a sale. Ms. Snavely interfered with that, and there was a capitalization rate that was applied, and that was the basis for the $127,706. They argued that there was no damages because the value of Mr. Miller's property increased. I would submit to the court that the evidence also was what Mr. Miller could have thought alternatively, a ranch essentially in Nevada, increased at a much rapid rate, so that the bankruptcy court actually could have found, although Ms. Snavely there was arguing there was speculation, was that his damages were substantially more because the increase in value in the other property he could have purchased at that time was greater than the increase in his value in the property in Montana, and we believe that at a minimum, the $127,706 value is supported, and that there is evidence to support that, and the court should affirm that. The other point, and I won't dwell on it. So the basis for that damage award is what he could have done with that money? Yes. And the evidence that we put in, Mr. Miller hired an expert witness, essentially, that looked at the cap rate for that, Dr. Binzel. And essentially what was is that the evidence that went in was he could have taken that $695,000 and essentially invested that, what he would have gotten on return on that investment generally. And how close was he to actually making it? I mean, I could go to Las Vegas and I could win a lot of money. I understand that. How close was he actually to making that other investment had he gotten the money? And to make sure I understand your question, I mean, I don't know that there was evidence put in that indicated where, I mean, obviously Mr. Miller didn't get the money at that time. I understand that. But how close does he say he was to buying that other property if he had gotten the money? Mr. Miller's testimony, and I don't have the record in front of me, obviously, was that he had lined up another ranch. And he has consistently testified to that. I believe, in fact, it was the Monitor Ranch in Nevada. That should be in the record. I'm telling you from my memory, Your Honor, but that is my recollection. But, counsel, what's your response to opposing counsel's counterargument that the property, in fact, increased in value so much that there was no damage? As I tried to say, Your Honor, I believe our argument, if you wanted to look at it from that standpoint, the argument is that he could have gotten land that would have appreciated at a much more rapid rate than what was in Montana. But that issue is speculated from both standpoints. So we felt that it was a conservative number of allowing the 10.5% cap rate. And that's how the judge arrived at his number. And we think that that was a conservative number. And my client actually thinks it should have been more. Okay. I see my time. I'm over my time. Thank you. Thank you. And, Mr. Jorgensen, you've saved a little time. Okay. May I begin by answering your question, Your Honor? Counsel has helped me enormously by conceding that we raised in our brief, it's at footnote 2 on page 1, these previous appeals. But there is an error in what he said. This 541C issue, it has been briefed before, but it is not over. And the reason it's not is the previous panels in those orders, all that was being dealt with in the orders was this one-third part of the parcel of property that had been carved out of the trust and given to Mr. Miller by the bankruptcy court. And this court said in both of those previous appeals, despite the 541C argument, all that is being dealt with here is the return of this land. The land has been sold to a good faith purchaser for value. We cannot give you back the land. Therefore, it is practically moot because we cannot afford relief. That does not resolve it. In this case, in this separate order, yes. The difficulty I had with the argument was it was not fleshed out in the briefs for this case. Yeah. Well, Your Honor, let me refer you to footnote 2, which refers to the briefs for both sides in those cases and specifically raises them. I know I'm going quickly here, but I hope they'll be on the record. Page 22 at the bottom where we say the bankruptcy's court order must be reversed because the court did not have jurisdiction over claims relating to the administration of the trust. Are you talking about in case number 0335317? Yes. These are the ones that my opposing counsel has referred to. And I agree with him that this issue has been fully briefed there. Is this in the opening brief that you're talking about or the responding brief? It's in the opening brief in both those cases. The opening brief on case number 0335317. Oh, no, no. No, no. I'm sorry, Your Honor. I'm talking about footnote 2, 0235248, 0235290. Okay. My question to you is where in the opening brief in this case was the 541C Grace Giudicata argument made? You bet. I think that, Your Honor, that we've obviously referred, as I said, in that footnote, but then also it's footnote 2. Footnote 2. In the blue brief. Yes. Okay. And then page 17. The footnote 2 says she contends the bankruptcy court did not have jurisdiction to issue the ruling. So from that, we're supposed to get the argument of 541C and Grace Giudicata? No, Your Honor. It's just referring you to the briefs in that case and incorporating them. Although then it is again raised, again, pages 17, 22, and 42. And the reason, just to say, we were – I don't want to leave you with the feeling that we were sandbagging you. I mean, the June 7th order dealing with this issue is the second item in the excerpts of record. I mean, we did clearly think that we had raised it here by saying that the district court lacked jurisdiction over these claims. That is the argument. I'm aware that our case law says if you want to address an argument to us, it has to be not only stated, but explicated within the briefs. Just making a reference is not sufficient to make an argument to the court. Yes, Your Honor. Although in other cases, I have believed, and perhaps erroneously, that you could refer the court to briefs in pending related cases involving the same parties. I see that I'm out of time, so I won't respond to the others. Thank you very much, Counsel. Miller v. Snavely, and I'll give the case number. The 03-35317 is now submitted for decision. And I have a feeling we're going to see you again. The next case is Miller v. Snavely, and the case number is 03-35895.
judges: Alarcon, W. Fletcher, Rawlinson